IN THE UNITED STATES DISTRICT COURT
FOR THE DISTRICT OF SOUTH CAROLINA
GREENVILLE DIVISION

| | |
|---|---|
| Package Concepts & Materials, Inc., ) | |
| ) | C.A. No. 6:05-1184-HMH |
| Plaintiff, ) | |
| ) | **OPINION & ORDER** |
| vs. ) | |
| ) | |
| JIF-PAK, Neil Mintz, and Marcus ) | |
| Mintz, ) | |
| ) | |
| Defendants. ) | |

This matter is before the court on Jif-Pak Manufacturing, Inc. ("Jif-Pak"), Neil Mintz, and Marcus Mintz's (collectively the "Defendants") motion to dismiss for lack of personal jurisdiction, failure to join an indispensable party, and lack of subject matter jurisdiction or, in the alternative, to transfer the case to the Southern District of California. After review, the court grants the Defendants' motion to transfer.

**I. FACTUAL AND PROCEDURAL BACKGROUND**

On May 9, 1995, Neil and Marcus Mintz were issued U.S. Patent No. 5,413,148 (the "'148 patent'") for a "'[c]asing structure for encasing meat products.'" (First Am. Compl. ¶ 8 & Attach. A ('148 Patent).) The Mintzs granted a license to Jif-Pak, a California corporation, to use the '148 patent to manufacture and sell food packaging products. (Pl.'s Mem. Opp'n. Mot. Dismiss 10.) Jif-Pak competes with Package Concepts & Materials, Inc. ("PCM"), a South Carolina corporation which also makes and sells stockinette devices. (Pl.'s Mem. Opp'n Defs.' Second Mot. Dismiss 1; First Am. Compl. ¶ 11.)

On August 2, 2004, Jif-Pak notified PCM's customers of the '148 patent by letter ("August Letter"). (Pl.'s Mem. Opp'n Defs.' Mot. Dismiss 1 & Ex. A (Letter from John L. Haller to Mark Gray of 3/9/05 at 1).) In March 2005, Jif-Pak again contacted several of PCM's customers by letter ("March Letter"), referencing the August Letter and informing them that they were infringing on the '148 patent by using PCM's product. (Id., First Am. Compl. ¶ 17.)

One of the recipients of the March Letter was SFG, Inc. ("SFG"). In the March Letter Jif-Pak sent to SFG, Jif-Pak asserted that "Jif-Pak Manufacturing, Inc. is the owner of the '148 Patent and the '148 Patent is good and valid under the law." (Id. Ex. A (Letter from John L. Haller to Mark Gray of 3/9/05 at 1).) The letter informed SFG that "SFG's meat encased net product infringes at least claim 1 of the '148 Patent," and demanded "an immediate resolution." (Id. Ex. A (Letter from John L. Haller to Mark Gray of 3/9/05 at 1-2).) Jif-Pak allegedly sent the March Letter to Publix Supermarkets ("Publix") and Gusto Packaging ("Gusto"), notifying them that they were infringing on the '148 patent. (Pl.'s Mem. Opp'n Defs.' Mot. Dismiss 2.)

On April 20, 2005, PCM filed a complaint in this court against Jif-Pak. In its complaint, PCM seeks a declaratory judgment for invalidity and non-infringement of the '148 patent and asserts a claim for tortious interference with a contract, arguing that Jif-Pak's contacting PCM's customers resulted in the customers' breaching their contracts with PCM. (First Am. Compl. ¶¶ 8-15.) PCM seeks entry of a judgment (1) that patent '148 is invalid, (2) that the manufacture, use, sale, offer for sale, or importation of PCM's stockinette devices does not infringe the '148 patent, and (3) that Jif-Pak has no right or authority to threaten or

maintain suit against PCM or PCM's customers for infringing the '148 patent. (Id. ¶ 15A.) Additionally, PCM seeks to enjoin the Defendants or others acting on behalf of the Defendants from bringing suit against PCM or any company with which PCM does business for infringing the '148 patent. (Id. ¶ 15B.) Finally, PCM seeks a judgment for its tortious interference with a contract claim, with costs and attorneys' fees. (Id. ¶¶ 15C-D.)

The Defendants filed suit against Dietz & Watson, Inc. ("DW") and PCM in the United States District Court for the Southern District of California on July 22, 2005 ("California Action"). In that suit, the Defendants allege claims of patent infringement against DW and PCM and seek a declaratory judgment that they have not interfered with PCM's relationship with its customers.

On July 27, 2005, Jif-Pak moved to dismiss PCM's complaint ("First Motion") in the instant action, arguing that the court lacks subject matter jurisdiction over the declaratory relief claim. Jif-Pak argued that there is no case or controversy between Jif-Pak and PCM because Jif-Pak does not own the '148 patent, and, therefore, PCM could have no reasonable apprehension of being sued by Jif-Pak. Moreover, Jif-Pak claimed that "it would be futile to allow an amendment complaint [sic] naming the patent owners because this Court would not have personal jurisdiction over them." (First Mot. 1.)

PCM responded to the First Motion on August 15, 2005, and filed its first amended complaint, adding defendants Neil Mintz and Marcus Mintz, both California residents. Although PCM raised no additional claims, PCM noted that Patent '148 was issued to Neil and Marcus Mintz, and asserted, "Neil and Marcus Mintz, on information and believe [sic], have exclusively licensed Defendant Jif-Pak under the ['148 Patent]." (First Am. Compl.

¶¶ 8-9.) Further, PCM added, "Defendant Jif-Pak originally have [sic] asserted itself to be the owner of the '148 patent, but has now withdrawn that assertion." (Id. ¶ 11.)

As a result of PCM filing its first amended complaint, Jif-Pak withdrew the First Motion and filed, along with Neil and Marcus Mintz, the second motion to dismiss ("Second Motion") on August 25, 2005. PCM responded in opposition to the Second Motion on September 12, 2005, and the Defendants filed their reply on September 22, 2005.

In the reply, the Defendants asserted that "[t]he Southern District of California is the best forum for this action, as there is no disagreement about personal jurisdiction . . . [or] subject matter jurisdiction. Thus, Neil and Marcus Mintz request that the Court dismiss this case or use its discretion in transferring this case under 28 U.S.C. § 1404." (Defs.' Reply Supp. Second Mot. 9.) Because Neil and Marcus Mintz's request for the court to transfer the case was raised in the Defendants' reply, the court ordered the PCM to brief the court on its position with respect to a transfer pursuant to 28 U.S.C. § 1404 or § 1406. PCM filed its response on October 4, 2005, opposing a transfer under either section. The Defendants responded on October 26, 2005.

## II. DISCUSSION OF THE LAW

As noted above, there are presently two pending cases ongoing with substantially the same parties and issues.[1] Of the two suits, the instant action was the first to be filed. "The

---

[1] The California Action includes one party, DW, that allegedly is contributorily infringing on the '148 patent and is not a party to the instant action. However, with the exception of the additional party, DW, and the claim that DW is contributorily infringing on the '148 patent, the claims and the parties are essentially identical.

first-filed action is preferred, even if it is declaratory, 'unless considerations of judicial and litigant economy, and the just and effective disposition of disputes, require otherwise.'" Serco Servs. Co., L.P. v. Kelley Co., 51 F.3d 1037, 1039 (Fed. Cir. 1995) (quoting Genentech, Inc. v. Eli Lilly & Co., 998 F.2d 931, 937 (Fed. Cir. 1993) abrogated in part by Wilton v. Seven Falls Co., 517 U.S. 277, 289-90 (1995)); see also Kerotest Mfg. Co. v. C-O-Two Fire Equip. Co., 342 U.S. 180, 183 (1952) (recognizing that the trial court's discretion tempers the rule in favor of the first-filed suit and stressing the importance of "conservation of judicial resources and the comprehensive disposition of litigation."). The Genentech court recognized that "sound reason[s] that would make it unjust or inefficient to continue the first-filed action" include "the convenience and availability of witnesses, or absence of jurisdiction over all necessary or desirable parties, or the possibility of consolidation with related litigation, or considerations relating to the real party in interest." 998 F.2d at 938. After careful consideration, the court has determined that lack of jurisdiction over Marcus Mintz weighs in favor of transferring this case to the Southern District of California.

**A. Personal Jurisdiction**

In the Second Motion, the Defendants argue that PCM's attempt to remedy the defect in its original complaint by adding Neil and Marcus Mintz, the patent owners, is futile because the court lacks personal jurisdiction over Neil and Marcus Mintz. (Second Mot. 1.) As a preliminary matter, issues concerning personal jurisdiction in a patent infringement case are governed by the law of the United States Court of Appeals for the Federal Circuit. Rates Tech. Inc. v. Nortel Networks Corp., 399 F.3d 1302, 1307 (Fed. Cir. 2005). Therefore, the law of the Federal Circuit must be applied in the instant action.

For a federal district court to have personal jurisdiction over a defendant, either the requirements of general jurisdiction or specific jurisdiction must be met. Each will be discussed in turn.

### 1. General Jurisdiction

In order to assert personal jurisdiction over Neil and Marcus Mintz based on activities unrelated to this lawsuit and thus satisfy the requirements of general jurisdiction, the court must find that they have had "systematic and continuous" contacts with South Carolina. See Helicopteros Nacionales de Columbia, S.A. v. Hall, 466 U.S. 408, 414-15 (1984). PCM has not specifically alleged that the Mintzs have had "systematic and continuous" contacts with South Carolina sufficient for the court to exercise general personal jurisdiction over them, and, upon reviewing the record, the court concludes that such contacts do not exist. Therefore, the court lacks general jurisdiction over Neil and Marcus Mintz.

### 2. Specific Jurisdiction

The court also lacks specific jurisdiction over Marcus Mintz, and may lack specific jurisdiction over Neil Mintz as well. Specific jurisdiction over a defendant exists when a suit arises out of a defendant's activities within the forum state. See Burger King Corp. v. Rudzewicz, 471 U.S. 462, 472 (1985). A district court has personal jurisdiction over defendants in a patent infringement suit to the extent allowed by the law in the state where the court sits, subject to the limitations of due process. See Commissariat A L'Energie Atomique v. Chi Mei Optoelectronics Corp., 395 F.3d 1315, 1319 (Fed. Cir. 2005).

South Carolina asserts specific jurisdiction over defendants pursuant to its long-arm statute, section 36-2-803 of the South Carolina Code of Laws. See Sheppard v. Jacksonville

Marine Supply, Inc., 877 F. Supp. 260, 264 (D.S.C. 1995). The South Carolina Supreme Court has interpreted South Carolina's long-arm statute to extend to the constitutional limits imposed by the due process clause. See id. at 265. It therefore follows that the two-step analysis collapses into a one-step due process analysis. See id.

Under the due process analysis, the plaintiff must show that the defendant had sufficient "minimum contacts" with South Carolina and that the exercise of jurisdiction would not offend "traditional notions of fair play and substantial justice." See World-Wide Volkswagen Corp. v. Woodson, 444 U.S. 286, 291 (1980) (internal quotation marks omitted). These minimum contacts must create a "substantial connection" with the forum state, and they must be directed at the forum state in more than a random, fortuitous, or attenuated way. McGee v. Int'l Life Ins. Co., 355 U.S. 220, 223 (1957); Burger King, 471 U.S. at 475. The requirements of due process are met if the defendant engaged in activity by which he purposefully availed himself of the privilege of conducting activities within the forum state, thus invoking the benefits and protections of its laws, if the defendant's conduct and connections with the forum state are such that the defendant should reasonably anticipate being haled into court in the forum state, or if the defendant has purposefully directed his activities at the residents of the forum, and the litigation results from alleged injuries that arise out of or relate to those activities. See Burger King, 471 U.S. at 472-75. Finally, "[e]ach defendant's contacts with the forum State must be assessed individually." Calder v. Jones, 465 U.S. 783, 790 (1984).

PCM alleges that Jif-Pak, and the Mintzs through their involvement with Jif-Pak, are subject to personal jurisdiction in South Carolina because Jif-Pak sent the March Letter to PCM's customers and PCM felt the economic harm in South Carolina. Even if the court assumes that the March Letter could support a finding of personal jurisdiction over Jif-Pak,[2] PCM faces a second hurdle which it cannot overcome – establishing personal jurisdiction over Neil and Marcus Mintz, the co-owners of the '148 patent. PCM argues that the court has personal jurisdiction over Neil Mintz because "Neil Mintz as president, has control over the actions of the corporate Defendant. The exercise of personal jurisdiction over at least Neil Mintz is therefore proper" on the basis that Neil Mintz was the "guiding spirit behind the wrongful conduct." (Pl.'s Mem. Opp'n Second Mot. 5,6); Springs Indus., Inc. v. Gasson, 923 F. Supp. 822, 827-28 (D.S.C. 1996). Under the law of the Federal Circuit, even if the president and sole owner of a corporation is in control of the corporation, that president may not be subject to personal jurisdiction if he did not disregard the corporate form in

---

[2]The court notes that there is strong authority weighing against this assumption. The Federal Circuit has found that warning letters like those sent by Jif-Pak, standing alone, do not qualify as sufficient minimum contacts to satisfy the due process requirement and subject the sender to personal jurisdiction. See Genetic Implant Sys., Inc. v. Core-Vent Corp., 123 F.3d 1455, 1458 (Fed. Cir. 1997). Moreover, the Federal Circuit has clarified that "[a] patentee should not subject itself to personal jurisdiction in a forum solely by informing a party who happens to be located there of suspected infringement." Red Wing Shoe Co., v. Hockerson -Halberstadt, Inc., 148 F.3d 1355, 1361 (Fed. Cir. 1998); see also Hildebrand v. Steck Mfg. Co., Inc., 279 F.3d 1351, 1356 (Fed. Cir. 2002) ("Fairness and reasonableness demand that a patentee be free to inform a party who happens to be located in a particular forum of suspected infringement without being subjected to a law suit in that forum.") In this case, the warning letters Jif-Pak sent were not even to South Carolina, but rather that the economic effects of the letters were felt by PCM in South Carolina. Such effects likely fail to constitute sufficient minimum contacts. See IMO Indus., Inc. v. Kiekert AG, 155 F.3d 254, 261-66 (3d Cir. 1998).

participating in the allegedly wrongful conduct. See Genetic Implant, 123 F.3d at 1459-60. Regardless, even if the court assumes that it has personal jurisdiction over Neil Mintz, the president of Jif-Pak, there is no evidence which supports a finding of jurisdiction over Marcus Mintz.

PCM alleges that "Marcus Mintz is with JIF-PAK Industrial Knitting, presumably an affiliate of JIF-PAK Manufacturing, Inc. Discovery is needed concerning the relationship between the JIF-PAK entities and Marcus Mintz' role in each company." (Pl.'s Mem. Opp'n Second Mot. 5 n.6.) In Marcus Mintz's sworn declaration, Mintz resolves any need for jurisdictional discovery. Marcus Mintz declares that he is a co-owner of the '148 patent and a resident of California, with no residence, real property, personal property, mailing address, or telephone number in South Carolina. (Defs.' Reply Supp. Second Mot. Ex. 1 (Marcus Mintz Decl. ¶¶ 1, 3, 4, 5, 7, 9, 10).) Moreover, he has no driver's license for South Carolina, and he is not an officer or director of any business organized under the laws of South Carolina. (Id. (Marcus Mintz Decl. ¶¶ 6, 8).) Additionally, he declares that he has never traveled to South Carolina for business, nor has he traveled to South Carolina for pleasure within the last ten years. (Id. (Marcus Mintz Decl. ¶¶ 11, 12).)

Although he admits to being a thirty-percent shareholder of Jif-Pak, Marcus Mintz further declares that he retired from work at Jif-Pak and has not been involved in the company's business for over 5 years. (Id. (Marcus Mintz Decl. ¶¶ 13, 14).) With respect to PCM's questions about Jif-Pak Industrial Knitting, Inc., Marcus Mintz stated in his affidavit that Jif Pak Industrial Knitting Inc. closed all operations and ceased doing business in July 2002. (Id. (Marcus Mintz Decl. ¶ 15).) Finally, and most significantly, Marcus Mintz

declared, "I was not at all involved in sending letters to or contacting any businesses regarding Plaintiff's infringement of the '148 patent." (Id. (Marcus Mintz Decl. ¶ 16).)

Upon careful review of the parties' submissions, the court concludes that, at a minimum, exerting personal jurisdiction over Marcus Mintz fails to satisfy the requirements of due process and haling him into this court would not comport with fair play and substantial justice. See Burger King Corp., 471 U.S. at 476. Because it determines that Marcus Mintz is an indispensable party as set forth below and that the case cannot go forward in South Carolina without him, the court need not make a final determination as to whether it lacks personal jurisdiction over Neil Mintz as well.

## B.  Necessary and Indispensable Party

Given that the court lacks personal jurisdiction over Marcus Mintz, the court cannot permit the instant action to go forward, as Marcus Mintz is a necessary and indispensable party to the litigation under Rule 19 of the Federal Rules of Civil Procedure. Rule 19 states in pertinent part:

> A person . . . shall be joined as a party in the action if (1) in the person's absence complete relief cannot be accorded among those already parties, or (2) the person claims an interest relating to the subject of the action and is so situated that the disposition of the action in the person's absence may (i) as a practical matter impair or impede the person's ability to protect that interest or (ii) leave any of the persons already parties subject to a substantial risk of incurring double, multiple, or otherwise inconsistent obligations by reason of the claimed interest.

Fed. R. Civ. P. 19(a). In determining whether a patentee is indispensable to suit such that a licensee must join the patentee in bringing an infringement action, "one must ascertain the intention of the parties and examine the substance of what was granted [to the licensee]."

10

Vaupel Textilmaschinen KG v. Meccanica Euro Italia S.P.A., 944 F.2d 870, 874 (Fed. Cir. 1991).

The Mintzs, as co-owners of the '148 patent, are indispensable parties to litigation involving its alleged infringement because they gave an informal, nonexclusive license to Jif-Pak to use the patented technology. In Abbott Laboratories v. Diamedix Corp., 47 F.3d 1128, 1131-32 (Fed. Cir. 1995), the Federal Circuit considered whether the district court had denied the patent owner's attempt to intervene in a patent action brought by the nonexclusive licensee of its patent. The Federal Circuit resolved the question by first asking "whether a licensee . . . has the statutory right to bring an action for infringement without joining the patent owner . . . ." Id. at 1130. The court concluded that "a bare licensee, who has no right to exclude others from making, using, or selling the licensed products, has no legally recognized interest that entitles it to bring or join an infringement action." Id. at 1131.

PCM argues that the Mintzs are not indispensable parties because Jif-Pak has an exclusive license to the patent. The evidence weighs conclusively against PCM's position, however. It is undisputed that the Mintzs are the registered owners of the patent. Moreover, each of them has declared in a sworn declaration that there is an informal agreement with Jif-Pak, and that the agreement makes Jif-Pak a nonexclusive licensee of the patent. (Defs.' Mem. Supp. Second Mot. Ex. 1 (Marcus Mintz Decl. ¶¶ 5-6 ) & Ex. 2 (Neil Mintz Decl. ¶¶ 5-7).) As such, the Mintzs could license their patent to another manufacturer at any time, should they choose.

Additionally, the evidence which PCM has adduced does not undermine the Mintzs' sworn declarations of the Mintzs as to the nature of their agreement with Jif-Pak. PCM relies

11

heavily upon Jif-Pak's assertion in the March Letter to SFK that Jif-Pak owns the '148 patent.[3] However, shortly after being served with PCM's complaint, Jif-Pak's attorney recognized his inadvertent mistake and contacted SFG's counsel via letter to inform him that Jif-Pak owned merely a license to use the '148 patent, and the Mintzs were the owners. While it is unfortunate that PCM likely relied on Jif-Pak's attorney's mistake in bringing its initial action solely against Jif-Pak in South Carolina, this does not undermine the Mintzs' sworn declarations as to the nature of the license Jif-Pak has to use the '148 patent or that Jif-Pak promptly notified SFG of its error.

PCM further contends that numerous representations Jif-Pak makes on its website, such as Jif-Pak's owning the trademark for Casing-Net, the mark under which the patented technology is sold, undermine the Mintzs' declarations. The court is unpersuaded. These representations are consistent with Jif-Pak being the licensee, indeed the only licensee at present, to have developed and marketed the '148 patent. While PCM may be correct that it is unlikely that the Mintzs would grant another company rights to use the '148 patent due to the Mintzs' interests in Jif-Pak, that does not change the fact that they <u>could</u> grant such a license if they so chose.

---

[3] PCM alleges that Jif-Pak sent the March Letter to other PCM customers. (Pl.'s Mem. Opp'n Mot. Dismiss 1-2, 4-5.) It appears, however, that Jif-Pak erroneously represented that it was the owner of the '148 patent only to SFC, as PCM asserts, "JIF-PAK wrote a letter to <u>one</u> of Package Concepts [sic] customers . . . [declaring that] JIF-PAK Manufacturing, Inc. is the owner of the '148 patent . . . ." (<u>Id.</u> 10 (emphasis added)). PCM attached only the March Letter from Jif-Pak to SFG, and the defendants have similarly attached only a copy of the letter from Jif-Pak's counsel to SFG in which Jif-Pak's counsel rectified his mistake. (Defs.' Mem. Supp. Second Mot. Ex. 3 (Letter from John L. Haller to Mark Gray of 3/9/05 at 1).) Nonetheless, PCM's allegations are ambiguous as to whether all of the March Letters contained the mistake or just the letter to SFG.

In sum, the Federal Circuit's approach and holding in Abbott Laboratories instructs the court here; just as Jif-Pak could not bring a suit for infringement of the '148 patent without the patent owners, PCM cannot proceed against a non-exclusive licensee, Jif-Pak, in its declaratory judgment action under the facts before the court. See Zumbro, Inc. v. California Natural Prods., 861 F. Supp. 773, 783 (D. Minn. 1994) (agreeing with other courts that "a patent holder--even one who holds a patent with another party--is an indispensable party in a declaratory judgment action challenging the patent's validity and enforcement.")[4]

### III. CONCLUSION

As set forth above, the court lacks personal jurisdiction over Marcus Mintz. Because he is an indispensable party to this litigation, PCM's declaratory judgment action may not proceed in this district. Rather than dismiss for lack of jurisdiction, however, the court finds that it is in the interests of justice to transfer the case to the United States District Court for the Southern District of California, where all of the claims may be adjudicated. "[S]ection 1406(a) has been interpreted to authorize transfers in cases where venue is proper but personal jurisdiction is lacking or some other impediment exists that would prevent the action from

---

[4] PCM relies upon Capri Jewelry, Inc. v. Hattie Carnegie Jewelry Enterprises, Ltd., 539 F.2d 846, 847 (2d Cir. 1976), Micro-Acoustics Corp. v. Bose Corp., 493 F. Supp. 356 (S.D.N.Y. 1980), and Independent Wireless Telephone Co. v. Radio Corp. of America, 269 U.S. 459 (1926), for the proposition that this court could proceed without the Mintzs in this litigation. However, Independent Wireless predated Rule 19, and Capri Jewelry and Micro Acoustics were considering dismissal under Rule 19 and predated the Federal Circuit's decision in Genentech, in which the court expressly permitted a district court to transfer the case to another district if the transferring court lacked jurisdiction over "all necessary or desirable parties." Genentech, 998 F.2d at 938. Hence, even if the Mintzs were not necessary parties under Rule 19, they are "desirable" parties to the litigation, as their interests in the '148 patent are at stake.

going forward in that district." In re Carefirst of Maryland, Inc., 305 F.3d 253, 255-56 (4th Cir. 2002); see also Goldlawr, Inc. v. Heiman, 369 U.S. 463, 466 (1962) (determining that a district court lacking personal jurisdiction over a defendant may transfer the case under § 1406(a)). Because the court determines that a transfer pursuant to § 1406(a) is proper,[5] the court need not further consider arguments in support of transferring the case pursuant to § 1404.

---

[5]The court notes that a transfer under § 1406 may also be warranted due to improper venue. PCM's argument that South Carolina is the proper venue is solely tied to PCM's alleged economic injury taking place in South Carolina. PCM quotes Millipore Corp. v. University Patents, Inc., 682 F. Supp. 227, 234 (D. Del. 1987), and cites Pennwalt Corp. v. Horton Co., 582 F. Supp. 438, 440 (E.D. Pa. 1984), for the proposition that the venue of a patent infringement action arises "where the alleged infringer is located, receives the damaging charges of infringement, or suffers economic injury as a result of the charges." (Pl.'s Resp. Opp'n Mot. Transfer 3.) No published opinion in the last fifteen years has relied upon Millipore or Pennwalt for the exceedingly broad standard for determining venue that those cases espouse, likely because that standard for determining venue was changed when 28 U.S.C. § 1391(b)(2) was amended, making venue no longer appropriate in the judicial district "in which the claim arose" but rather in "a judicial district in which a *substantial part* of the events or omissions giving rise to the claim occurred." Database Am., Inc. v. Bellsouth Adver. & Publ'g Co., 825 F. Supp. 1216, 1224 (D.N.J. 1993) (internal quotation marks omitted).

It is therefore

**ORDERED** that the Defendants' motion to dismiss for lack of personal jurisdiction is denied. It is

**ORDERED** that this case is transferred to the United States District Court for the Southern District of California.

**IT IS SO ORDERED.**

                                            s/ Henry M. Herlong, Jr.
                                            United States District Judge

Greenville, South Carolina
November 14, 2005